IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,

Plaintiff,

v.                                                      Case No.  21-CR-527-JFH

KEVIN LYNN GREER,

Defendant.

OPINION AND ORDER

Before the Court is the Motion to Suppress Evidence Seized from Residence ("Motion"), filed by Defendant Kevin Lynn Greer ("Defendant").  Dkt. No. 36.  Defendant is charged with: (1) Felon in Possession of a Firearm, in violation of 18 U.S.C. §§ 922(g) and 924(a)(2); (2) Possession of Marijuana with Intent to Distribute, in violation of 18 U.S.C. §§ 841(a)(1) and 841(b)(1)(d); (3) Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. §924(c)(1)(A)(i); (4) Receipt of Child Pornography, in violation of 18 U.S.C. 2252(a) and 2252(b)(1); and (5) Possession of Child Pornography in Indian Country, in violation of 18 U.S.C. § 1151, 2252(a)(4), and 2252(b)(2).  Dkt. No. 46.  He argues that evidence seized from his residence should be suppressed because the search warrant authorizing the search was not supported by probable cause.  *Id.*  For the reasons set forth below, the Motion is denied.

BACKGROUND

A.  Initial Investigation

In December 2020, the Federal Bureau of Investigation ("FBI") began investigating a 27-year-old man named Alexander Sweet ("Sweet"), based on a tip that he was in an intimate relationship with 16-year-old girl ("Victim 1") and that he possessed child pornography.  Dkt. No. 36-3 at 7.  Based on evidence obtained in the course of the investigation, agents suspected that

Defendant was closely associated with Sweet, that Sweet and Defendant had shared child pornography with one another, and that Defendant illegally possessed firearms and drugs. *Id.* at 12-18.

Agents believed that Defendant was occupying two adjacent buildings located at 520 W. Broadway St. and 530 W. Broadway St. in Collinsville, Oklahoma:  one as a residence and the other as a business. *Id.* at 13, 16-18.  However, it was not clear which of the two buildings was used for which purpose.  The FBI sought and obtained search warrants for both addresses. *Id.* at 18-19.  The warrants authorized FBI agents to search for evidence that Defendant:  (1) received child pornography; (2) possessed child pornography; (3) possessed a firearm (as a convicted felon); and/or (4) possessed a controlled substance with the intent to distribute it.  Dkt. No. 3 at 3.

### B.  The Affidavits

Identical affidavits were submitted in support of the search warrant applications for each address.  Dkt. No. 36-1; Dkt. No. 36-3.  At issue in Defendant's Motion is the affidavit in support of the search warrant application for the 530 W. Broadway address (the "Affidavit").

The Affidavit was attested to by Special Agent Brian S. Dean ("Special Agent Dean") of the FBI assigned to the Oklahoma Safe Streets and Trails Force based in Tulsa, Oklahoma.  Dkt. No. 36-1 at 2.  In the Affidavit, Special Agent Dean explained that in December 2020, the FBI began investigating Sweet and his relationship with Victim 1.  Dkt. No. 36-3 at 7-9.  In an interview with agents, Victim 1 confirmed that she started dating Sweet in September 2020. *Id.* at 9.  According to Victim 1, over the course of the relationship, she sent Sweet a "significant number" of "sexually graphic" photographs and videos across multiple social media platforms. *Id.* at 10.  Agents discovered at least one sexually explicit video of Victim 1 in a Google account linked to Sweet. *Id.* at 12.

In response to a search warrant for email accounts associated with Sweet, the FBI received several encrypted files, one of which included an email to Sweet from "Scott Kline" at computerserviceoftulsa@gmail.com with the subject "Anais 18 S.F. Venezuela" containing a video of what appeared to be a minor female (post-pubescent) taking off a towel and posing in front of the camera (the "Anais Video"). *Id.* at 13. The body of the email stated, "This girl is for real and very ready to start a family." *Id.* The Anais Video was submitted to the National Center for Missing and Exploited Children (NCMEC) for review. *Id.* NCMEC did not have any information pertaining to the female in the video and did not provide any opinion as to her age. *Id.* Another email received by the FBI contained a business flyer listing the address for Computer Service of Tulsa as 530 W. Broadway. *Id.* And a search of law enforcement databases revealed that "Scott Kline" was a known alias of Defendant. *Id.*

Special Agent Dean further explained that after Sweet's arrest, at least five young women claiming to have been victimized by Sweet confirmed that Sweet spent a significant amount of time with Defendant at Defendant's residence and shop. *Id.* at 16-18. Defendant was described as being "sketchy" and "off" with an infatuation for young Central American and South American girls with whom he frequently communicated online. *Id.* at 15.

Victim 1 gave subsequent interviews in September and October 2021 in which she told agents that Sweet communicated with Defendant daily using social media and text messaging applications and that Sweet often sent sexually explicit pictures of her to Defendant. *Id.* at 18. Victim 1 also described an incident that occurred in July 2021, in which Sweet took her to Defendant's residence to trim Defendant's marijuana plants. *Id.* Sweet gave Victim 1 alcohol and after she was intoxicated, he took her to a bedroom in another part of the building and sexually assaulted her while Defendant watched. *Id.* When confronted about the assault, Sweet told Victim

1 that Defendant "did it too," alluding to the possibility that Defendant also sexually assaulted Victim 1 "after she passed out." *Id.* at 16-17. Victim 1 told agents that Defendant may have recorded the assault using a camera that was pointed at the bed in the bedroom where the assault occurred. *Id.* at 17. According to Special Agent Dean, Victim 1 identified 520 W. Broadway as the location where the assault took place, despite the fact that the structure at that address "appears to be a business and is listed as such online." *Id.*

Victim 1 also told agents that Sweet moved guns and drugs for Defendant (including to and from Defendant's residence) on multiple occasions and identified 520 W. Broadway as Defendant's residence. *Id.* Agents retrieved several photographs of Victim 1 and Sweet posing with marijuana plants. *Id.* Victim 1 confirmed that the photographs were taken at 520 W. Broadway the night of the assault. *Id.* According to Special Agent Dean, the background of the photographs shows what appears to be the inside of a metal building with a large garage door, "which is consistent with the structural makeup" of 520 W. Broadway. *Id.* Sweet allegedly brought another victim to trim Defendant's marijuana plants on numerous occasions. *Id.* at 16 n. 6. That victim and her sister were allegedly "employed" by Defendant to care for his marijuana plants and were compensated for their services with marijuana. *Id.*

Special Agent Dean explained that utility checks revealed that Defendant was listed as the responsible party for both 520 and 530 W. Broadway. *Id.* at 18. Electronic surveillance for the "several months" proceeding the warrant application captured an individual moving between the 520 and 530 addresses between the hours of 8:00 p.m. and 7:00 a.m. on a regular basis, which Special Agent Dean noted was consistent with the "pattern of life" described by Victim 1. *Id.* Additionally, agents observed a "significant number" of vehicles associated with Defendant parked outside both addresses, including a 1998 GMC Savana, which was previously associated

with Sweet. *Id.*

With regard to Defendant's background, Special Agent Dean noted that Defendant's criminal history included multiple felony convictions for burglary and fraud as well as convictions for possession of a controlled substance and use of a weapon during the commission of a felony. *Id.* at 18. He also noted that in June 2020, Defendant was investigated for sexually inappropriate conduct with his 9-year-old daughter. *Id.* at 16. During the course of that investigation, Defendant admitted to showering with her and "educating" her on "what the penis is, what the veins are for, etc … He also explained what Kegel muscles are and demonstrated that he could move his penis by contracting his Kegel muscles." *Id.* 530 W. Broadway was the primary address listed for Defendant on the report. *Id.*

Although it was unknown which address Defendant used as a residence, Special Agent Dean applied for search warrants for both the 520 and 530 W. Broadway. *Id.* at 18-19; Dkt. No. 36-1. He explained that, based on his training and experience, he knew that "individuals with the intent to view and/or possess, collect, receive, or distribute pornography often maintain their collections in a digital or electronic format as a means of secure and private storage as well as ease of accessibility." Dkt. No. 36-3 at 18. And "[d]ue to the rapid development of cell phones and other storage mediums such as removable hard drives, these collections can be maintained and kept close at all times, usually at the collector's residence, place of business, or inside the collector's vehicle." *Id.* Special Agent Dean further explained that "it is not uncommon for individuals involved in the illicit distribution of both guns and narcotics to maintain multiple cache sites for similar reasons and or to avoid detection by law enforcement." *Id.*

Based on this information, a United States Magistrate Judge (the "magistrate judge") issued search warrants for 520 and 530 W. Broadway, identifying numerous items to be seized to

including:  (1) computers and storage media; (2) records relative to any computer or storage medium whose seizure was authorized by the warrant; (3) routers, modems, and network equipment used to connect computers to the internet; (4) child pornography and child erotica; (5) cameras, film, and digital photo storage devices; (6) internet connected cameras or smart-home devices with the ability to record audio or video or with the ability to detect the presence of occupants; (7) records or information regarding the occupancy or ownership of the premises searched, any computer equipment found therein, and the identity or location of any person suspected of receiving or possessing child pornography or illegally possessing a firearm or controlled substances; (8) any clothing, bedsheets, blankets, or other items that may appear in images depicting child pornography; (9) drugs and associated paraphernalia; (10) firearms; (11) ammunition; and (12) any documentation associated with the criminal activities described above. *Id.* at 29-33; Dkt. No. 36-1 at 29-33.

## C.  Execution of the Search Warrant and Resulting Charges

The search warrants were executed on November 10, 2021, and FBI agents recovered seven firearms, approximately 572 rounds of ammunition, and approximately 4 kilograms of marijuana packaged in 41 plastic bags.  Dkt. No. 3 at 3-4.  And in a post-*Miranda* interview, Defendant admitted to having previously been convicted of felony charges and to having a significant amount of marijuana and multiple firearms in his residence.  *Id.* at 4.

On December 6, 2021, the Government filed an Indictment, charging Defendant with:  (1) Felon in Possession of a Firearm, in violation of 18 U.S.C. §§ 922(g) and 924(a)(2); (2) Possession of Marijuana with Intent to Distribute, in violation of 18 U.S.C. §§ 841(a)(1) and 841(b)(1)(d); and (3) Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. §924(c)(1)(A)(i). Dkt. No. 17.  On February 23, 2022, the Government filed a Superseding

Indictment, adding charges for: (1) Receipt of Child Pornography, in violation of 18 U.S.C. 2252(a) and 2252(b)(1); and (2) Possession of Child Pornography in Indian Country, in violation of 18 U.S.C. § 1151, 2252(a)(4), and 2252(b)(2). Dkt. No. 46.

Defendant seeks to exclude the evidence seized from 530 W. Broadway, arguing that the Affidavit did not contain sufficient information to establish probable cause to believe that drugs, guns, or child pornography would be located at that address. Dkt. No. 36 at 1-9.[1]

## DISCUSSION

### A. Authority

"To be constitutional, a search warrant must issue only upon probable cause." *United States v. Burns*, 624 F.2d 95, 99 (10th Cir. 1980). "This requires more than mere suspicion but less evidence than is necessary to convict." *Id.* To establish probable cause to justify a search, an affidavit in support of a search warrant "must contain facts sufficient to lead a prudent person to believe that a search would uncover contraband or evidence of criminal activity." *United States v. Danhauer*, 229 F.3d 1002, 1006 (10th Cir. 2000).

A magistrate judge issuing a search warrant must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 214 (1983). In making this determination, the magistrate judge "may draw reasonable inferences from the material provided in the warrant application." *United States v. Rowland*, 145 F.3d at 1205. "A reviewing court should accord great deference to a magistrate's

---

[1] Defendant initially requested an evidentiary hearing on the Motion [Dkt. No. 36], which the Government opposed [Dkt. No. 39 at 1]. Defendant subsequently withdrew his request for an evidentiary hearing, noting the parties' stipulation that the Motion could be resolved on the record. Dkt. No. 41.

determination of probable cause." *United States v. Reed*, 195 F. App'x 815, 822 (10th Cir. 2006).

The Court's duty is "simply to ensure that the magistrate had a substantial basis for concluding

that probable cause existed." *Gates*, 462 U.S. at 238-39.

**B. Probable Cause to Search for Evidence of Illegal Firearm and Drug Activity**

Defendant argues that the information in the Affidavit was insufficient to establish

probable cause to search 530 W. Broadway for evidence of illegal firearms and drug activity. Dkt.

No. 36 at 3-5. The Court disagrees. According to Special Agent Dean, Victim 1 told agents that

Sweet moved guns and drugs for Defendant (including to and from Defendant's residence) on

multiple occasions and that Sweet took her to Defendant's residence, which she identified as 520

W. Broadway, to trim his marijuana plants. Dkt. No. 36-3 at 18. This was corroborated by

photographs on Victim 1's phone which showed Victim 1 and Sweet with marijuana plants in a

building that was visibly consistent with the building at 520 W. Broadway. *Id.* The Affidavit also

indicates that Sweet took another victim to Defendant's residence on multiple occasions to trim

Defendant's marijuana plants, that the victim and her sister were "employed" in this capacity by

Defendant, and that the victim and her sister were compensated by Defendant with marijuana. *Id.*

at 16 n. 6. Defendant does not challenge the veracity of the victims who provided this information.

Dkt. No. 36 at 3-5.

While the information pertaining to illegal firearms and drug activity on Defendant's

property points to the 520 W. Broadway location, Special Agent Dean noted that Defendant was

associated with both 520 and 530 W. Broadway through utility and business records, witness

statements, and agents' observation of the locations. *Id.* at 16-18. Special Agent Dean explained

that based on his training and experience, "it is not uncommon for individuals involved in the illicit

distribution of both guns and narcotics to maintain multiple cache sites for similar reasons and or

8

to avoid detection by law enforcement." Dkt. No. 36-3 at 18.  He also noted that for several months

prior to the issuance of the search warrants, agents observed an individual moving between the

buildings at 520 and 530 W. Broadway after hours.  *Id.*  Finally, the Affidavit includes information

regarding Defendant's criminal history, which includes felony convictions.  *Id.*

Drawing reasonable inferences based on this information, the magistrate judge could have

determined that there was a fair probability that evidence that Defendant illegally possessed

firearms and engaged in illegal drug activity would be found at 530 W. Broadway.

### C.  Probable Cause to Search for Evidence of Child Pornography

Defendant argues that the information in the Affidavit was insufficient to establish

probable cause to search 530 W. Broadway for evidence of child pornography.  Dkt. No. 36 at 6-

9.  Defendant suggests that the Affidavit was deficient because it did not support an inference that

he possessed child pornography or that child pornography would be located at 530 W. Broadway.

Again, the Court disagrees.

In the Affidavit, Special Agent Dean explained that Defendant had a reputation among

Sweet's victims as someone who was infatuated with young Central American and South

American girls.  Dkt. No. 36-3 at 15.  Defendant was reported to have engaged in sexually

inappropriate conduct with his 9-year-old daughter.  *Id.* at 16.  Victim 1, who was a minor, stated

that Sweet frequently shared sexually explicit photographs and videos of her with Defendant.  *Id.*

at 10.  Sweet was found to be in possession of at least one sexually explicit video of Victim 1.  *Id.*

at 12.  Victim 1 described being sexually assaulted in a bedroom at 520 W. Broadway that had at

least one camera in it, which was oriented at the bed.  *Id.* at 16-17.  Defendant's business, Computer

Service of Tulsa, was linked to 530 W. Broadway.   From an email address ending in

computerserviceoftulsa@gmail.com, Defendant sent Sweet the Anais Video, which showed what agents believed to be a minor female disrobing. *Id.* at 12-13.

Based on his training and experience, Special Agent Dean explained that he knew individuals who collect or distribute pornography "often maintain their collections in a digital or electronic format as a means of secure and private storage as well as ease of accessibility." Dkt. No. 36-3 at 18. And "[d]ue to the rapid development of cell phones and other storage mediums such as removable hard drives," such collections are highly mobile and can be maintained "at the collector's residence, place of business, or inside the collector's vehicle." *Id.* As previously explained, although agents had information that Defendant was using the buildings at 520 and 530 W. Broadway as a business and a residence, they could not determine which building was being used for which purpose. *Id.* at 18-19.

Drawing reasonable inferences based on the information set forth in the Affidavit and the nature of the evidence sought, the magistrate judge could have determined that there was a fair probability that evidence of child pornography would be found at 530 W. Broadway.

### D.  The Good Faith Exception

Law enforcement officers' reliance upon a search warrant issued by a neutral magistrate judge "creates a presumption that the officer is acting in good faith." *United States v. Chambers*, 882 F.3d 1305, 1310 (10th Cir. 2018). If the search warrant is later determined to lack probable cause, evidence yielded from the search need not be suppressed where the officers' reliance on the search warrant was objectively reasonable. *Id.* This is commonly referred to as the "good faith exception" to the exclusionary rule. *United States v. Edwards*, 813 F.3d 953, 970 (10th Cir. 2015) ("Under the good-faith exception to the exclusionary rule, if a warrant is not supported by probable cause, the evidence seized pursuant to the warrant need not be suppressed if the executing officer

acted with an objective good-faith belief that the warrant was properly issued by a neutral magistrate." (internal quotation marks and citation omitted)).

Here, Defendant argues that the good faith exception would not apply because agents' reliance on the search warrant for 530 W. Broadway was not objectively reasonable. The Court rejects this argument, having previously found that the search warrant for 530 W. Broadway was supported by probable cause. *See United States v. Leon*, 468 U.S. 897, 923 (1984) (recognizing that an officer's reliance is objectively unreasonable when the warrant is based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." (citation omitted)).

IT IS THEREFORE ORDERED that Defendant's Motion to Suppress Evidence Seized from Residence [Dkt. No. 36] is DENIED.

Dated this 26th day of April 2022.

_____
JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE